UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RATTANA POK, et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>ZBS LAW, LLP, et al.,<br><br>            Defendants. | No. 2:25-cv-01084-DJC-CSK<br><br>TEMPORARY RESTRAINING ORDER |

      Plaintiffs in this matter have moved to temporarily restrain all foreclosure proceedings, including a foreclosure sale, against their home, arguing the foreclosure arises out of a fraudulently procured deed of trust securing a home equity line of credit that Plaintiffs "neither applied for, executed, nor received." As evidence of this claim, Plaintiffs attest that the loan was fraudulently obtained and produce the expert report of a forensic document examiner who reviewed the deed of trust and concluded the notary's acknowledgment on the deed might be altered. In opposition, Defendant produces an affidavit from the notary in question who testifies that, to the best of her knowledge, Plaintiffs signed the deed.

      In light of this competing evidence, the Court finds there are serious questions going to the merits of Plaintiffs' claims. The Court also finds that the balance of

1

equities tip sharply in Plaintiffs' favor given the impending sale of their home. Accordingly, the Court will grant Plaintiffs' request and order that all foreclosure proceedings against Plaintiffs' residence are temporarily restrained until the Court can hold a preliminary injunction hearing, including an evidentiary hearing as to the validity of the deed of trust.

## BACKGROUND

Plaintiffs Rattana Pok and Sokeo Chhit purchased their current residence located at 3850 Montaro Lane, Stockton, California, 95212 ("Property") in May 2003. (Ex Parte Appl. Temporary Restraining Order ("TRO") (ECF No. 6) at 1.) To facilitate their purchase of the Property, Plaintiffs obtained a mortgage from Defendant Bank of America ("BoA") (formerly Countrywide Bank) on May 14, 2003. (*Id.* at 1-2.)

Plaintiffs allege that, on or about July 12, 2005, a fraudulent a Deed of Trust ("2005 DOT") was recorded against their Property without their knowledge purporting to secure a second loan, i.e., a $90,000 Home Equity Line of Credit ("2005 Loan"). (*Id.* at 2.) Plaintiffs further allege that, on or about August 23, 2006, a Modification Agreement to the Home Equity Line of Credit Agreement ("Modification Agreement") amended the terms of the 2005 Loan by increasing the credit limit from $90,000 to $180,000. (*Id.*) However, Plaintiffs allege they "never consented to, authorized, or signed this Modification Agreement, nor were Plaintiffs made aware of its execution." (*Id.*) Further, Plaintiffs allege they "never applied for, authorized, or executed any documents related to the purported 2005 Loan, nor did Plaintiffs receive or benefit from any disbursement of its proceeds." (*Id.*) Nevertheless, from approximately May 2005 through February 2007, Plaintiffs allege withdrawals exceeding $123,000 were made against the 2005 Loan without Plaintiffs' knowledge or consent. (*Id.*)

On or about September 19, 2016, Plaintiffs contacted BoA to inquire about the possible existence of a second loan on their Property, as they had been receiving unsolicited collection calls from Defendant Real Time Resolutions Inc. ("RTR"). (*Id.*) RTR alleges that they became the servicer on the 2005 Loan in 2010. (Def.'s Opp'n

(ECF No. 1-2) at 2.) Plaintiffs were informed there was "nothing at all" in the loan file. (TRO at 2.) Plaintiffs contacted BoA again on or about December 5, 2016, and were again told there was no information about a second loan. (*Id.*) Plaintiffs allege that, based on these representations, they concluded no second loan existed or, if it had existed, had been resolved, and that the collection efforts were fraudulent. (*Id.*)

Plaintiffs allege they first became aware of the existence of the 2005 Loan on July 28, 2021, when a Notice of Default ("First NOD") was recorded by Defendant ZBS Law LLP ("ZBS") acting as trustee on behalf of RTR. (*Id.* at 2–3.) Plaintiffs allege that, in response to this revelation, they reviewed the 2005 DOT and Modification Agreement, and noted "multiple fatal defects," including that the 2005 DOT and its modification erroneously identified Plaintiffs' Property as Lot 64 when it is in fact Lot 66, and falsely identified Plaintiff Pok as an unmarried man. (*Id.* at 3.) Plaintiffs brought these issues to the attention of BoA, ZBS, and RTR. (*Id.*) Plaintiffs allege that, in response, BoA opened a fraud investigation, and RTR required Plaintiffs to file identify theft reports, which they did. (*Id.*) In response to Plaintiffs report of fraud, ZBS rescinded the First NOD. (*Id.*) However, on or about February 24, 2022, BoA concluded their fraud investigation and found there was no basis to support Plaintiffs' fraud claims. (*Id.*) Accordingly, RTR reopened foreclosure proceedings, and on March 28, 2023, ZBS, acting as trustee on behalf of RTR, recorded a second Notice of Default. (*Id.*) On January 5, 2024, a Notice of Trustee's Sale was recorded. (*Id.*)

Plaintiffs brought this action in San Joaquin County Superior Court on January 31, 2024. (ECF No. 1-2.) RTR removed the action based on diversity jurisdiction on April 11, 2025. (ECF No. 1.) Plaintiffs subsequently filed a First Amended Complaint on May 6, 2025, alleging 16 causes of action for (1) quiet title, (2) cancellation of instrument, (3) declaratory relief, (4) unfair competition under California Business and Professions Code section 17200 *et seq.*, (5) lack of standing to foreclose, (6) wrongful foreclosure, (7) negligence, (8) negligent misrepresentation, (9) fraud, (10) violation of the Fair Debt Collection Practices Act, (11) violation of the Rosenthal Fair Debt

Collection Practices Act, (12) violation of the Truth in Lending Act, (13) slander of title, (14) violation of California Civil Code section 2924.17, (15) identity theft, and (16) intentional infliction of emotional distress. (ECF No. 4.) Two days later, Plaintiffs brought the pending Ex Parte Application for Temporary Restraining ("TRO"), seeking to enjoin a foreclosure sale of their Property scheduled for May 14, 2025, and any other foreclosure proceedings. (TRO at 1.) The Court set a hearing for May 13, 2025. (ECF No. 10.) The Parties subsequently stipulated to postpone the sale of the Property until after the hearing on the TRO, and the Court reset the TRO hearing to May 22, 2025. (ECF Nos. 11, 13.)

## LEGAL STANDARD

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).

In determining whether to issue a temporary restraining order, courts apply the factors that guide the evaluation of a request for preliminary injunctive relief, which are: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). The Ninth Circuit also employs the "serious questions" test, which states "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

injunction is in the public interest." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## DISCUSSION

### I. Application of the *Winter* Factors

Here, the Court finds that Plaintiffs have satisfied the serious questions test. *First*, as to the likelihood of success on the merits, the crux of Plaintiffs' claims is that the 2005 DOT and subsequent Modification Agreement are fraudulent as Plaintiffs did not apply for, execute, or authorize any loan secured by the 2005 DOT, nor did they receive any funds from the purported obligation. (*See* TRO at 5–14.) As evidence of this, Plaintiff Pok attests that he and his wife, who are co-owners of the Property, had no knowledge of the 2005 Loan and did not sign any documents related to that loan, including the 2005 DOT and Modification Agreement. (Pok Decl. (ECF No. 6-4) ¶¶ 6–16.) Plaintiffs also produce an expert report of forensic document examiner Linda L. Mitchell, who conducted a comprehensive forensic analysis of the notary acknowledgment page of the disputed 2005 DOT. Mitchell's report identifies multiple anomalies indicative of alteration, obliteration, or manipulation in the notarization. (Mitchell Decl., Ex. B (ECF No. 6-3).) Specifically, she identifies irregular markings consistent with erased or removed content, unusual alignment and spacing of the handwritten insertions, and atypical placement of critical notarial elements. (*Id.*) Based on these irregularities, Mitchell concludes there is evidence to suggest the notarized acknowledgment may be a composite or altered document rather than an intact and contemporaneously executed notarial act. (*Id.*) Finally, Plaintiffs note that the 2005 DOT improperly purports to encumber "Lot 64," whereas Plaintiffs' Property is legally described as "Lot 66." (TRO at 5.)

In opposition, RTR argues that numerous records show the 2005 Loan was not fraudulent, as Plaintiffs applied for the 2005 Loan and executed the necessary documents, including the 2005 DOT and Modification Agreement. (Def.'s Opp'n at 1, 4.) As evidence of this, RTR produces a declaration of Jennifer Bradford (formerly

5

Jennifer Gardea), who notarized the 2005 DOT. In her declaration, Bradford confirms that her legal signature and notary stamp appear on page 10 of the 2005 DOT, confirms that she verified Plaintiff Pok's identity at the time he signed the 2005 DOT, states that she has no reason to believe that Plaintiff Pok did not sign the 2005 DOT, and confirms that neither her identity nor her notary stamp were ever stolen or misused. (Bradford Decl. (ECF No. 16-2) ¶¶ 6–13.) Bradford also produces a copy of her journal entry recording the signing of the 2005 DOT. (Bradford Decl., Ex. C (ECF No. 16-2).) RTR further argues that Plaintiffs were aware of the 2005 Loan before 2021, providing evidence that Plaintiff Pok spoke to RTR by telephone on numerous occasions and was advised of the 2005 Loan via letter in 2010. (Def.'s Opp'n at 4; Trakhtenbroit Decl., Ex. D (ECF No. 1-2) (copy of 2010 letter); Trakhtenbroit Decl., Ex. E (ECF No. 1-2) (further letters sent to Plaintiffs between 2010 and present).) Finally, RTR argues that that misidentification of the lot number in the 2005 DOT is of little consequence as the address and parcel ID number are both correct. (Def.'s Suppl. Opp'n (ECF No. 16) at 8.)

The Court finds that the Parties' evidence raises serious questions going to the merits of Plaintiffs' claims, as Plaintiff Pok's testimony and Mitchell's expert report cast doubt as to whether the signatures on the 2005 DOT were, in fact, valid. RTR relies heavily on Bradford's declaration as evidence that Plaintiffs' theory of fraud is clearly debunked. However, the Court agrees with Plaintiffs that "Bradford's declaration does not eliminate the possibility of forgery." (Pls.' Suppl. Reply (ECF No. 18) at 2.) Bradford states that she has "no reason to believe" the 2005 DOT was not signed by Plaintiff Pok, but this testimony neither definitively establishes it was Plaintiff Pok who signed the 2005 DOT, nor addresses the anomalies flagged by Mitchell. Given this conflicting material testimony, the Court finds that Plaintiffs have met their burden to show a TRO is warranted pending an evidentiary hearing to determine whether Plaintiffs' evidence is sufficient to transform the TRO into a preliminary injunction. While an evidentiary hearing is not required before a district court rules on a

preliminary injunction, "if the disputed [] facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate." *Int'l Molders' & Allied Workers' Local Union, No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986); *see also Aguirre v. Chula Vista Sanitary Service & Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir. 1976) ("There is no apparent reason to deny petitioner an opportunity to present his witnesses where . . . there is a sharp factual conflict, resolution of that conflict will determine the outcome, the witnesses are immediately available, the facts are simple, little time would be required for an evidentiary hearing, and the court has concluded that relief must be denied if the motion is decided on the affidavits alone."). Such is the case here, where the disputed facts are relatively straight-forward and holding an evidentiary hearing will be neither unduly burdensome nor impractical as resolution of this dispute turns on the testimony of a limited number of witnesses. Thus, the Court finds an evidentiary hearing is warranted here.

*Second*, a party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter,* 555 U.S. at 22. California law is clear that the foreclosure sale of a person's home is irreparable harm. *See Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 472–74 (2008); Cal Civ. Code § 3387; *see also Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) ("[T]he loss of an interest in real property constitutes an irreparable injury."). As Plaintiffs are threatened with an imminent foreclosure sale of their home, they have shown a likelihood of irreparable harm.

*Finally*, the Court finds that the final two *Winter* elements are also met, as the balance of equities tips sharply in Plaintiffs' favor given this is an action to foreclose on Plaintiffs' home, and the public interest is served by temporarily enjoining a potentially wrongful foreclosure. *See, e.g., Castellanos v. Countrywide Bank NA*, No. 15-CV-00896-BLF, 2015 WL 914436, at *2 (N.D. Cal. Feb. 27, 2015) (finding balance of equities to tip sharply in favor of a temporary restraining order in light of possible

7

foreclosure proceedings); *Min v. Selene Fin., LP*, No. 23-cv-06335-WHO, 2023 WL 8812881, at *2 (N.D. Cal. Dec. 20, 2023) (granting temporary restraining order in finding the public interest best served by enjoining potentially wrongful foreclosure).

Accordingly, good cause having been shown, the Court will issue the requested TRO.

## II. No Bond Shall Be Required

Under Federal Rule of Civil Procedure 65(c), a court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Despite this mandate, a court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

RTR requests that, if the Court grants Plaintiffs' TRO, the Court require Plaintiffs to provide security in the amount of $210,284.96, the full amount of the outstanding loan. (Def.'s Suppl. Opp'n at 8–9.) The Court finds that this security is not required here. RTR has articulated no credible harm they would suffer from a brief restraining order preserving the status quo pending the resolution of these serious claims, as the TRO here merely delays the foreclosure sale temporarily and does not extinguish RTR's purported rights should it ultimately prevail.

Accordingly, the Court will waive Plaintiffs' requirement to post a bond.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin the Sale Scheduled for May 14, 2025, and Order to Show Cause re: Preliminary Injunction (ECF No. 6) is GRANTED.

    a. Defendant Real Time Resolutions Inc., their employees, agents, and/or any other person or entity interacting with them or on their

behalf, are restrained and enjoined from conducting a Trustee's Sale for the property located at 3850 Montaro Lane, Stockton, California, 95212.

    b. This Order shall expire on June 4, 2025, at 5:00 PM unless extended by further order of this Court.

2. The Court VACATES the hearing currently set for May 22, 2025, at 11:00 AM via videoconference before District Judge Daniel J. Calabretta.

3. The Court further SETS an evidentiary hearing for June 4, 2025, at 9:00 AM in Courtroom 7 before District Judge Daniel J. Calabretta.

    a. At the hearing, the Parties shall SHOW CAUSE why the Court should not convert this Order into a preliminary injunction.

    b. The Parties may also present evidence, including live testimony, concerning the validity of the July 12, 2005, Deed of Trust and August 23, 2006, Modification Agreement, and any related issues addressed in the Parties' briefings on the Temporary Restraining Order.

4. The Parties shall file any supplemental briefings, if desired, by 5:00 PM on June 2, 2025.

5. The Parties may stipulate to modify the dates and times set forth in this Order, subject to approval of the Court.

IT IS SO ORDERED.

Dated: **May 21, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – Pok25cv1084.TRO

9