1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RATTANA POK, et al.,                        No. 2:25-cv-01084-DJC-CSK

12                     Plaintiffs,

13              v.                                 ORDER DENYING PRELIMINARY
                                                   INJUNCTION
14    ZBS LAW, LLP, et al.,

15                     Defendants.

16

17

18          Plaintiffs Rattana Pok and Sokeo Chhit have moved to preliminarily enjoin all

19    foreclosure proceedings against their home, arguing the foreclosure arises out of a

20    fraudulently procured deed of trust securing a home equity line of credit that Plaintiffs

21    "neither applied for, executed, nor received."  Following its issuance of a temporary

22    restraining order, the Court held an evidentiary hearing during which Plaintiffs and

23    Defendant Real Time Resolutions, Inc., the prime servicer of the loan, presented

24    evidence concerning the validity of the deed of trust.

25          Having carefully weighed the testimony at the hearing, as well as the evidence

26    in the record, the Court finds that Plaintiffs have failed to demonstrate their

27    entitlement to a preliminary injunction at this stage.  It is well established that

28    notarized deeds are presumed to be valid.  Plaintiffs' evidence is insufficient to rebut

                                                1

1  that presumption here, as Defendant presented credible testimony and evidence at

2  the hearing that the notarization of the deed was valid and that Plaintiff Pok was the

3  signatory.  Plaintiffs' testimony and evidence, by contrast, was far less credible or

4  persuasive.  In sum, based on the evidentiary record before the Court, the Court does

5  not find that Plaintiffs have shown either a likelihood of success on the merits or

6  serious questions going to the merits of their claims by demonstrating the deed of

7  trust was likely fraudulent.  Accordingly, the Court will not enjoin the foreclosure

8  proceedings against Plaintiffs' residence at this time.

9                                    **BACKGROUND**

10          The Parties and the Court are familiar with the background of this matter as set

11  forth in the Court's Temporary Restraining Order.  (*See* Temporary Restraining Order

12  ("TRO") (ECF No. 19) at 2–4.)  As is relevant here, Plaintiffs purchased their residence

13  located at 3850 Montaro Lane, Stockton, California, 95212 ("Property") in May 2003.

14  (Ex Parte Appl. Temporary Restraining Order ("Mot. TRO") (ECF No. 6) at 1.)  Plaintiffs

15  allege that, on or about July 12, 2005, a fraudulent a Deed of Trust ("2005 DOT") was

16  recorded against their Property without their knowledge purporting to secure a

17  $90,000 Home Equity Line of Credit ("2005 Loan") from Countrywide Home Loans,

18  Inc.  (*Id*. at 2.)  Plaintiffs further allege that, on or about August 23, 2006, a

19  Modification Agreement to the Home Equity Line of Credit Agreement ("Modification

20  Agreement") amended the terms of the 2005 Loan by increasing the credit limit from

21  $90,000 to $180,000.  (*Id*.)  However, Plaintiffs allege they "never consented to,

22  authorized, or signed this Modification Agreement, nor were Plaintiffs made aware of

23  its execution."  (*Id*.)  Further, Plaintiffs allege they "never applied for, authorized, or

24  executed any documents related to the purported 2005 Loan, nor did Plaintiffs

25  receive or benefit from any disbursement of its proceeds."  (*Id*.)  Nevertheless, from

26  approximately May 2005 through February 2007, Plaintiffs allege withdrawals

27  exceeding $123,000 were made against the 2005 Loan without Plaintiffs' knowledge

28  or consent.  (*Id*.)

1   Plaintiffs allege they first became aware of the 2005 Loan on July 28, 2021,

2   when a Notice of Default was recorded by ZBS Law LLP acting as trustee on behalf of

3   Defendant.  (*Id.* at 2–3.)  Plaintiffs allege that Defendant commenced foreclosure

4   proceedings against the Property in 2023, and on January 5, 2024, a Notice of

5   Trustee's Sale was recorded.  (*Id.* at 3.)  In response, Plaintiffs brought this action in

6   San Joaquin County Superior Court on January 31, 2024, and Defendant removed the

7   action based on diversity jurisdiction on April 11, 2025.  (ECF No. 1.)  Plaintiffs filed a

8   First Amended Complaint on May 6, 2025, alleging 16 causes of action arising from

9   the allegedly fraudulent 2005 DOT and Modification Agreement for (1) quiet title,

10   (2) cancellation of instrument, (3) declaratory relief, (4) unfair competition under

11   California Business and Professions Code section 17200 *et seq.*, (5) lack of standing to

12   foreclose, (6) wrongful foreclosure, (7) negligence, (8) negligent misrepresentation,

13   (9) fraud, (10) violation of the Fair Debt Collection Practices Act, (11) violation of the

14   Rosenthal Fair Debt Collection Practices Act, (12) violation of the Truth in Lending Act,

15   (13) slander of title, (14) violation of California Civil Code section 2924.17, (15) identity

16   theft, and (16) intentional infliction of emotional distress.  (ECF No. 4.)

17   Two days later, Plaintiffs brought an Ex Parte Application for Temporary

18   Restraining Order and Order to Show Cause re: Preliminary Injunction, seeking to

19   enjoin a foreclosure sale of the Property scheduled for May 14, 2025, and any other

20   foreclosure proceedings.  (Mot. TRO at 1.)  The Court granted the Temporary

21   Restraining Order on May 21, 2025, set an evidentiary hearing to determine the

22   propriety of converting the Temporary Restraining Order into a preliminary injunction,

23   and granted the Parties leave to file supplemental briefing.  (TRO at 8–9.)  The Court

24   held an evidentiary hearing on July 9, 2025, with Allison Erggelet and John Moore

25   appearing for Plaintiffs, and Nathaniel Lucey and Scott Mangum appearing for

26   Defendant.  The matter was submitted.

27   ////

28   ////

1

**LEGAL STANDARD**

2    "A preliminary injunction is an extraordinary remedy never awarded as of right."

3  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a

4  preliminary injunction must establish that he is likely to succeed on the merits, that he

5  is likely to suffer irreparable harm in the absence of preliminary relief, that the balance

6  of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.  A

7  preliminary injunction may only be awarded "upon a clear showing" of evidence that

8  supports each relevant preliminary injunction factor.  *Id.* at 22.  "This 'clear showing'

9  requires factual support beyond the allegations of the complaint, but the evidence

10  need not strictly comply with the Federal Rules of Evidence."  *CI Games S.A. v.*

11  *Destination Films*, No. 2:16-cv-05719-SVW-JC, 2016 WL 9185391, at *11 (C.D. Cal.

12  Oct. 25, 2016).

13    Alternatively, courts in the Ninth Circuit apply a "sliding scale" approach, under

14  which "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that

15  serious questions going to the merits were raised and the balance of hardships tips

16  sharply in the plaintiff's favor . . . so long as the plaintiff also shows that there is a

17  likelihood of irreparable injury and that the injunction is in the public interest."  *All. for*

18  *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands*

19  *Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008).)  Serious questions are those

20  "which cannot be resolved one way or the other at the hearing on the injunction."

21  *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 926 (9th Cir. 2003) (quoting *Republic of*

22  *the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

23

**DISCUSSION**

24    When seeking a preliminary injunction, "[l]ikelihood of success on the merits is

25  a threshold inquiry and is the most important factor."  *Env't Prot. Info. Ctr. v. Carlson*,

26  968 F.3d 985, 989 (9th Cir. 2020).  Plaintiffs' claims here turn primarily on the validity

27  of the 2005 DOT, which was purportedly signed by Plaintiff Pok and notarized by

28  Jennifer Bradford, formerly Gardea, on May 21, 2005.  (*See* Bradford Decl. ¶¶ 1–14

4

1   (ECF No. 16-2); *see also id.*, Ex. A (ECF No. 16-2).)  The California Evidence Code

2   creates a presumption that an acknowledged document is genuine, providing in

3   relevant part:

4
>   A certificate of the acknowledgment of a writing other than a
5   will, or a certificate of the proof of such a writing, is prima
>   facie evidence of the facts recited in the certificate and the
6   genuineness of the signature of each person by whom the
>   writing purports to have been signed . . . .
7

8   Cal. Evid. Code § 1451; *see also* Cal. Evid. Code § 602 (stating that "[a] statute

9   providing that a fact or group of facts is prima facie evidence of another fact

10  establishes a rebuttable presumption").  This presumption extends to deeds of trust.

11  *See, e.g., Hernandez v. Madrigal*, No. 2:09-cv-00413-MCE-GGH, 2010 WL 1493506, at

12  *3 (E.D. Cal. Apr. 14, 2010) (applying presumption to allegedly fraudulent deed of

13  trust); *Simmons First Nat'l Bank v. Lehman*, No. C–13–02876-DMR, 2015 WL 632393, at

14  *4 (N.D. Cal. Feb. 13, 2015) (same).  Therefore, the notarized 2005 DOT is presumed

15  genuine, and the document is "as strong as if the facts certified had been duly sworn

16  to in open court by a witness apparently disinterested and worthy of belief."  *Ware v.*

17  *Julian*, 122 Cal. App. 354, 355 (1932) (citation omitted).  This presumption is not

18  conclusive, but "the burden of overcoming [the presumption] is on the one who

19  disputes" it; here, Plaintiffs.  *Du Bois v. Larke*, 175 Cal. App. 2d 737, 745 (1959).

20       Plaintiffs attempted to overcome this presumption at the evidentiary hearing

21  and in their briefings by arguing the 2005 DOT was fraudulent for several reasons.

22  First, Plaintiff Pok repeatedly denied that he signed the 2005 DOT or received any

23  proceeds from the 2005 Loan.  (Pok Decl. (ECF No. 6-4) ¶¶ 6–16; Suppl. Pok Decl.

24  (ECF No. 33-2) ¶¶ 2, 11, 15, 22.)  Second, Plaintiffs argued that the notarization of the

25  2005 DOT by Bradford was suspect.  In support of this, Plaintiffs presented testimony

26  from forensic document examiner Linda L. Mitchell, who conducted a forensic analysis

27  of the notary acknowledgment page of the 2005 DOT and testified that Bradford's

28  notarization showed signs of possible alteration, obliteration, or manipulation, and

1   was unusually laid out.  (Mitchell Decl., Ex. B (ECF No. 6-3).)  Based on these

2   irregularities, Mitchell concluded there was evidence to suggest the notarized

3   acknowledgment might be a composite or altered document rather than an intact and

4   contemporaneously executed notarial act.  (*Id.*)  Plaintiffs also presented testimony

5   from Natalie Schachar, an investigative expert who investigated Bradford's notarial

6   history and attested she changed her name shortly after the 2005 notarization, let her

7   notary commission lapse between 2006–2009 and 2013–2020, and failed to return her

8   notarial journals during those periods of lapse in violation of California Government

9   Code section 8209, which Plaintiffs argued "support[ed] strong implications of forgery

10  or identity misuse."  (Pls.' Suppl. Br. (ECF No. 33) at 2; Schachar Decl., Ex. A (ECF No.

11  33-1).)  Finally, Plaintiffs argued the 2005 DOT was facially invalid as it contained a

12  material defect misidentifying the secured property as "Lot 64," whereas Plaintiffs' title

13  is vested in "Lot 66," rendering the instrument "void ab initio and incapable of

14  supporting any foreclosure activity."  (Mot TRO at 5–14.)

15        The Court previously found when issuing the Temporary Restraining Order that

16  this evidence "raise[d] serious questions going to the merits of Plaintiffs' claims, as

17  Plaintiff Pok's testimony and Mitchell's expert report cast doubt as to whether the

18  signatures on the 2005 DOT were, in fact, valid."  (TRO at 6.)  However, in light of the

19  evidence presented by Defendant at the evidentiary hearing and in their

20  supplemental briefings, the Court now finds that Plaintiffs' evidence is insufficient at

21  this stage to rebut the presumption that the 2005 DOT is valid.

22        In particular, at the hearing, Defendant presented testimony that Bradford's

23  notarization of the 2005 DOT was valid, as Bradford attested she had reviewed the

24  2005 DOT and confirmed her signature and stamp on the 2005 DOT were correct.

25  (Bradford Decl. ¶¶ 7–10.)  Bradford further attested that no one had forged her name

26  or stolen her notary stamp, which she kept in a locked case at home, and explained

27  that she had changed her name following the notarization due to changes in her

28  marital status, not to commit fraud.  (*Id.* ¶¶ 3, 13.)  Finally, Bradford testified that, to

6

1   the best of her knowledge, the 2005 DOT was signed by Plaintiff Pok, producing a

2   copy of her notary records from that transaction which included Plaintiff Pok's

3   thumbprint, legal signature, and driver's license number.  (*Id.* ¶¶ 6, 12; *see also*

4   Bradford Decl. re Journal Entry, Ex. A (ECF No. 45) (relevant entries from Bradford's

5   notary records).)  The Court found Bradford's testimony as to the validity of her

6   notarization and Plaintiff Pok's signature to be highly credible.  Indeed, Bradford

7   brought her notary journal to the hearing and permitted the Court to examine the

8   entries pertaining to Plaintiff Pok.  Bradford also testified that she had notarized the

9   2005 DOT at Plaintiffs' Property, a fact which was reflected in the notary records.  (*See*

10  Bradford Decl. re Journal Entry, Ex. A.)

11       In further support of Defendant's argument that Plaintiff Pok signed the 2005

12  DOT, Defendant also presented testimony from Kourosh Nikoui, an expert fingerprint

13  analyst.  (*See* Lucey Decl., Ex. A (ECF No. 36) (listing Nikoui's credentials).)  Nikoui

14  compared photographs of Plaintiff Pok's fingerprints captured by Bradford for her

15  notarization of the 2005 DOT with photographs of fingerprints captured by two other

16  notaries, Gavina Franklin[1] and Cassandra A. Greenlee,[2] when notarizing documents

17  for Plaintiff Pok in 2021 and 2003 respectively.  Nikoui testified that the fingerprints

18  collected by Bradford in 2005 matched the fingerprints collected in 2021 and 2003 by

19  Franklin and Greenlee, indicating the same person, Plaintiff Pok, had signed all three

20  documents.  (Lucey Decl., Ex B (ECF No. 36) (comparing fingerprints collected by

21  Bradford and Franklin); Lucey Decl., Ex. C (ECF No. 36) (comparing fingerprints

22

23  [1] Franklin appeared at the hearing and testified that she had notarized documents in 2021 for Plaintiff
    Pok.  In support of this testimony, Franklin produced copies of her notary journal entries from that
    transaction, in which she had recorded Plaintiff Pok's thumbprint, signature, and driver's license
24  number.  (Def.'s Ex. 9 (ECF No. 39).)  Plaintiff Pok acknowledged that this notarization had occurred
25  during cross-examination.

26  [2] Greenlee did not appear at the hearing but submitted an affidavit attesting she notarized a deed of
    trust for Plaintiff Pok in 2003, attaching a copy of the notarized deed and a copy of her notary journal
27  entry logging Plaintiff Pok's thumbprint, signature, and driver's license number thereto.  (Greenlee
    Decl. (ECF No. 36).)  Plaintiff Pok acknowledged he had executed a deed of trust before Greenlee in
28  2003.  (Suppl. Pok. Decl. (ECF No. 33-2) ¶ 22; *Id.*, Ex. L.)

1    collected by Bradford and Greenlee).)  Again, the Court found Nikoui's testimony both

2    credible and compelling.

3        Viewed as a whole, Defendant's evidence clearly indicates that the 2005 DOT

4    was validly signed by Plaintiff Pok and notarized by Bradford, making the deed

5    enforceable.  While Plaintiff Pok strongly denied signing the 2005 DOT, his testimony

6    at the hearing was largely evasive, contradictory, and far less compelling than the

7    evidence presented by Defendant.  In addition, Bradford's testimony sufficiently

8    rebutted the concerns raised by Mitchell and Schachar that the notarization of the

9    2005 DOT was possibly fraudulent.

10        Finally, the misidentification of the lot number in the 2005 DOT is insufficient to

11   render the deed invalid, as the address and parcel ID number identified therein are

12   both correct.  (*See* Def.'s Suppl. Br. (ECF No. 32) at 2–6.)  *See* Cal. Code Civ. Proc.

13   § 2077(1) (when "construing the descriptive part of a conveyance of real property," if

14   "there are certain definite and ascertained particulars in the description, the addition

15   of others which are indefinite, unknown, or false, does not frustrate the conveyance,

16   but it is to be construed by the first mentioned particulars"); *see also Contreras v. Fed.*

17   *Home Loan Mortg. Corp.*, No. ED CV 12- 01164-RGK (DTBx), 2012 WL 12898783 at *2

18   (C.D. Cal. Dec. 3, 2012) (dismissing plaintiff's action to set aside foreclosure sale and

19   finding that deed of trust was valid when it included only the address of the property

20   given that this was sufficient for the "identification and location of the property being

21   conveyed"); *Leonard v. Osburn*, 169 Cal. 157, 160 (1915) ("A deed is not void for

22   uncertainty because of errors or inconsistency in some of the particulars of the

23   description . . . [and] will be sustained if it is possible from the whole description to

24   ascertain and identify the land intended to be conveyed.")

25   ////

26   ////

27   ////

28   ////

1    For these reasons, the Court finds that Plaintiffs are neither likely to succeed nor

2  raise serious questions on the merits of their claims that the 2005 DOT was

3  fraudulent.[3]

4    Having concluded that Plaintiffs have failed to establish a likelihood of success,

5  the Court need not reach the remainder of the *Winter* factors.  *See Pimentel v. Dreyfus*,

6  670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party

7  must demonstrate a fair chance of success on the merits, or questions serious enough

8  to require litigation." (quotation marks and citation omitted)); *see also Baird v. Bonta*,

9  81 F.4th 1036, 1040 (9th Cir. 2023) (courts can deny a preliminary injunction without

10  "'consider[ing] the other [preliminary injunction] factors' if a movant fails to show a

11  likelihood of success on the merits") (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869

12  F.3d 848, 856 (9th Cir. 2017)); *Smith v. Helzer*, 95 F.4th 1207, 1215 (9th Cir. 2024)

13  (affirming denial of a preliminary injunction after finding no likelihood of success and

14  without discussing any other preliminary injunction factor).  Accordingly, Plaintiffs'

15  Motion for a Preliminary Injunction will be denied.

16  **CONCLUSION**

17    For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for a

18  Preliminary Injunction (ECF No. 6) is DENIED.

19

20    IT IS SO ORDERED.

21  Dated:  **July 17, 2025**

22  Hon. Daniel J. Calabretta
   UNITED STATES DISTRICT JUDGE

23

24  DJC4 – Pok25cv1084.PIOrder

25

26

27  [3] The Court notes that its findings herein are for the purposes of deciding Plaintiffs' Motion for Preliminary Injunction only and are not intended as *res judicata* in this case.  The Court's decision shall in no way impair Plaintiffs' entitlement to a full trial on the merits of their claims.

28